VINCENT M. FINIZIO and ALBERT DE CHIARA, as Copartners, Transacting Business under the Registered Name of the INTERNATIONAL TRADING COMPANY, Respondents, *v.* AMERICAN STEEL EXPORT COMPANY, a Corporation, Appellant.

First Department, July 2, 1920.

Sales — offer of option to purchase goods made without consideration — right of party making offer to rescind or modify same before acceptance — offer of option to purchase additional goods — parol modification of written option by requiring purchaser to give security for payment.

An option to purchase goods offered by the seller without a consideration is a mere offer of a contract which is not binding until accepted and at any time before acceptance may be withdrawn or modified by the party making the offer.

Hence, where the defendant having sold certain goods to the plaintiffs, offered without consideration an option for the purchase of additional goods within a certain time, the defendant had a right before the acceptance of the option by the plaintiffs to make the additional sale conditional upon the plaintiffs giving security for payment. This is true although the original offer of an option was in writing and the modification thereof was by parol, for there is no rule of evidence which forbids the modification of a written offer, before acceptance, by parol, and the rule excluding oral evidence to vary a written contract has no application.

Appeal by the defendant, American Steel Export Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 21st day of January, 1920, upon the verdict of a jury, and also from an order entered in said clerk's office on the 19th day of January, 1920, denying the defendant's motion for a new trial made upon the minutes.

*Merton E. Lewis* of counsel [*Morris, Plante & Saxe*, attorneys], for the appellant.

*Robert M. Boyd, Jr.*, for the respondents.

Smith, J.:

On the 16th day of October, 1916, the defendant communicated with the plaintiffs, naming certain different prices for packages of four different sizes of sheets of tin with certain weight and at different prices. The tin was to be delivered f. o. b. cars New York in carload lots for lighterage free delivery to ship side. The offer then provided: " If favored with the order in October, for which period we will hold the quotation firm, we can make shipment beginning in December. Terms: Cash upon presentation of railroad documents less 1%. * * * Option 25,000 Base Boxes." Upon October twentieth the International Trading Company, under which name the plaintiffs were doing business, wrote to the defendant accepting the 8,000 boxes of tin plates of specified sizes named, and stated: " For the remainder 17,000 boxes you offer firm for reply in October, we are awaiting for a reply to our offer and hope to give you our acceptance before the time of the refusal expires." Upon October twenty-fifth the International Trading Company wrote to the defendant accepting 2,000 additional boxes. Upon October thirtieth the International Trading Company

wrote to the defendant as follows: " We confirm you our letter of the 25th inst. with regard to our acceptance for the additional 2,000 boxes Tin Plates and beg now to inform you that we have sold the balance of 15,000 boxes and are pleased then to confirm our acceptance for the above said quantity. We will give you specification of the sizes wanted by our buyer as soon as we receive it as well as shipping instructions. Prices and terms in accordance with your offer."

Upon October twentieth the defendant, having inquired as to the credit of the plaintiffs, became fearful of the contract and demanded the plaintiffs' security upon the acceptance of orders by plaintiffs. According to the testimony of the witness Beal, upon that day he had a conversation with Finizio, one of the plaintiffs. He was asked to state what was said by him and what was said by Finizio. He answered thus: " Mr. Finizio brought the order in as the International Trading Company, and I told him we had investigated the International Trading Company's credit and the credit of Mr. Finizio himself and we could not accept the order or an order from them without a bank letter of credit or a guarantee that would protect us." Mr. Beal was the secretary and assistant treasurer of the defendant corporation.

The testimony of Albert G. Dowden, who was the general sales manager, was to the effect that upon the twentieth of October he had a conversation with Mr. Finizio, and was asked to tell what was said between himself and Finizio on the subject of the letter of October twentieth. He answered thus: " I told Mr. Finizio that I could not pass any order through until it had been O. K.'d by the credit department. We then went to see Mr. Beal, who was handling the credits of the company, and we put the matter up to him for his opinion. Mr. Beal told Mr. Finizio in my presence that he could not enter an order for him unless it was supported by a letter of credit or a guarantee of payment; he said that as far as he could ascertain Mr. Finizio did not have the financial resources which would warrant us in placing the material in the mill and taking the risk of having it on our hands in the event of his failure to meet the invoices when they came due, and he insisted upon our having some financial arrangement that would guarantee us against loss in such an event." He

First Department, July, 1920.                [Vol. 192.

further says: " I told Mr. Finizio that according to Mr. Beal's ruling we could not accept his order unless he could furnish us with a letter of credit or a guarantee of the payment."

After the thirtieth of October, and after the receipt of the letter written upon that date by the plaintiffs to the defendant, Mr. Dowden, acting in behalf of the defendant, called Mr. Finizio to his office. The evidence of Finizio is to the effect that he then said that the specifications might be furnished later, and the defendant was apparently willing to accept the order with specifications furnished later if the plaintiffs would furnish the guaranty required in the conversation of October twentieth. There is no dispute about the fact that that guaranty was then insisted upon by the defendant and that the plaintiffs refused to give it, claiming that they were not required to give it under the offer made.

The trial court charged the jury as follows: " That brings you to the only two questions in the case and they are: Was the order for the 15,000 base boxes given in time and was defendant obliged to accept it? And was the defendant justified in rejecting the order upon the two grounds mentioned — the first being whether the order was given properly, and the second being that the defendant was not obliged to fill the order excepting upon some satisfactory security being furnished by the plaintiffs. I will simplify the case still further by saying that I charge you as matter of law that under the contract, as it was made between the parties, being made up of the option and the acceptance, the plaintiffs were not obliged to give any security. The contract was plain. It was ' Cash upon presentation of railroad documents less one per cent,' which meant that when the railroad documents were delivered the goods were ready for delivery, but you can have these documents only upon paying cash less one per cent, and, if the plaintiffs complied with that, why they were entitled to the goods. There was not a word said about giving any security or any guaranty. So that is out of the case."

" Mr. Lewis:   *   *   *   I ask your Honor to charge the jury that if they find that the order of October 30th was not accompanied by a letter of credit or a guaranty or a specification of sizes and quantities, and if they believe that the contract called for the order to be accompanied by a specification of sizes and

quantities and accompanied by a credit or guaranty, then they must find a verdict for the defendant.   The Court: Declined. Mr. Lewis: Exception."

I assume that the law is settled that an option without consideration given is a mere offer of a contract which is not binding until accepted, and at any time before the acceptance may be withdrawn or modified by the party making the offer. There was no consideration for the offer made in the letter of October sixteenth.   The provision in the offer, " Option 25,000 base boxes," should be construed to place a limit upon the amount that the defendant was offering to sell and the plaintiffs were at liberty under that option to purchase any part of said number of boxes, or all of the said 25,000.   This would seem to be the natural interpretation arising from the very nature of an option; but if otherwise doubtful, the practical construction of the parties has given to those terms this interpretation, and in their dealings the option was accepted at different amounts and at different times, 8,000 boxes upon October twentieth, and 2,000 boxes upon October twenty-fifth, and no question seems to have arisen that these orders were not within the terms of the option because the option was not exercised as to the full 25,000 boxes at the time it was given. It is probably true that as to the first order of 8,000 boxes having been given before the conversation of October twentieth between the defendant's officers and Finizio, it did not require the giving of any security or any guaranty, but as to this order for 8,000 boxes the defendant insisted upon security, and finally security was given by the customer to whom the plaintiffs had sold the tin.   Upon the twentieth of October this offer had only been accepted as to 8,000 boxes.   I see no reason why at that time the offer could not have been withdrawn as to any further acceptances, or modified.   It is claimed that the original offer was in writing and this modification was by parol, but I know of no rule of evidence which forbids the modification of a written offer, before acceptance, by parol. The rule excluding oral evidence to vary a written contract after a contract is made has no application here.   It is further contended that this demand of security was simply as to the two orders made and could not be deemed to be a modification of the offer made in the letter of October sixteenth, as

far as might apply to the other 15,000 boxes which had not then been ordered. This claim deserves little consideration, however, by reason of its absurdity. It is not likely upon the twentieth of October that they were demanding security for the delivery of 2,000 boxes and were willing to continue their offer for the delivery of the other 15,000 boxes not yet accepted, without security. The only business-like interpretation of the conversations upon the twentieth of October, to the effect that they had been examining as to the financial circumstances of the plaintiffs and were not satisfied and could not deliver these boxes, except upon security, is that the condition was applicable to the whole offer for the 25,000 boxes, and, while there might have been a legal right to demand the 8,000 boxes, as to which the offer had been accepted prior to this conversation, without the giving of security, there was no further right to give any further acceptance under the option or offer made without willingness on their part to give the security demanded. Such is also the legal effect of the statement made by the defendant to the plaintiffs upon the twentieth of October, that they would recognize no acceptance thereafter, except upon the giving of security, and this was the stumbling block when there was an endeavor to accept the offer as to the 15,000 boxes on October thirtieth. Security was demanded and was positively refused by the plaintiffs upon the ground that the plaintiffs were not obligated to give security under the offer as made. It is quite possible that the defendant was not fully aware of its rights and thought that its strongest defense was the fact that the dimensions of the tin and the number of each quantity were not specified in the attempted acceptance of October thirtieth. But the defendant at no time signified an intention of waiving its insistence upon the giving of security before any deliveries would be made of the remaining 15,000 boxes, and as appears from the evidence it was the important question to the defendant lest it might be left with these sizes, cut to suit that purchaser, upon its hands.

Upon the evidence of the plaintiffs it might perhaps be found that the specifications of the sizes and numbers of each size which were intended to be included in the acceptance could not be insisted upon, inasmuch as the evidence is to

the effect that it was stated that those sizes might be thereafter furnished. But the condition which would be equally obligatory as to furnishing security is not claimed to have been waived, as the plaintiff Finizio himself swears that security was demanded and refused by him at the time.

It cannot be found upon this evidence that the defendant was subject to the imputation of sharp practice to avoid a contract where the prices had risen, as suggested by the counsel. It apparently was willing to extend the time of the plaintiffs to perfect their acceptance of the 15,000 boxes, provided the plaintiffs would conform to the requirements of the option, to wit, to specify the sizes and quantities of the tin which they would purchase and to furnish the security upon which the defendant had the right then to insist. The only reason apparently for the refusal of the defendant to recognize this acceptance of the option was the refusal of the plaintiffs to furnish this security and if, as I think, the defendant had the right to alter its option by requiring such security as a condition of its offer on October twentieth, then the plaintiffs were in default in refusing to furnish that security. The defendant was not standing upon the technical requirement as to time, but was standing upon a substantial qualification of its offer, that qualification having been made on October twentieth in the conversations with the plaintiff. It is true that the version of these conversations between the defendant and Finizio are to an extent contradicted, but, in refusing to charge the request made which I have specified, the court refused to submit that question to the jury, so that the defendant upon this appeal is entitled to claim that the jury might well have found, what was most reasonably claimed by the defendant, that upon October twentieth the option contained in the letter of October sixteenth was to that extent modified. If exception had been taken to the charge of the learned trial judge to the effect that there was under no circumstances the right to demand security, that exception would in my view have presented reversible error. Substantially the same question is raised, however, by the exception to the refusal of the court to charge as hereinbefore referred to.

For these reasons the judgment and order should be reversed

and a new trial granted, with costs to the appellant to abide the event.

Clarke, P. J., Laughlin and Merrell, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.